United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Michael C. McIntyre, and<br>Carol G. McIntyre, Plaintiffs<br><br>v.<br><br>Marriott Ownership Resorts, Inc., and<br>Marriott Resorts Title Company, Inc.,<br>Defendants | Civil Action No. 13-80184-Civ-Scola |

### Order Granting Motion To Dismiss

This case involves allegations of misrepresentations in connection with the sale of a timeshare and the title-insurance policy purchased as part of that sale. The Defendants, Marriott Ownership Resorts, Inc., and Marriott Resorts Title Company, Inc., have moved to dismiss the Plaintiffs' Second Amended Complaint for failing to state a claim upon which the Court may grant relief. Alternatively, they argue the Court should grant summary judgment in their favor based on the undisputed evidence they have presented. The Plaintiffs, Michael and Carol McIntyre, lay out several procedural and substantive arguments in their opposition to both motions. For the reasons detailed in this Order, the Court grants the Motion to Dismiss. The Court also explains the reasons why, even had the McIntyres' Second Amended Complaint stated a viable claim, the Court would have granted summary judgment against them.

### 1. Background

Marriott Ownership Resorts developed a timeshare property in Palm Beach County, Florida called Oceana Palms. The McIntyres purchased a timeshare from Marriott Ownership Resorts in March 2009. The McIntyres were original purchasers of the timeshare.

During a sales presentation, sales agents of Marriott Ownership Resorts told the McIntyres that they "were required to procure title insurance in order to receive the benefits of participation in Marriott's 'Timeshare/Marriott Rewards Program.'" (2d Am. Compl. ¶¶35–36, ECF No. 27.) The McIntyres questioned "why their purchase of title insurance was necessary, 'since Marriott must have received clear title to the property in order to register as a [timeshare].'" (*Id.* ¶39.) In response, Marriott Ownership Resorts' sales agents stated that title insurance "was a 'required' and 'necessary' component of the [timeshare] purchase." (*Id.*) In addition to these statements, the timeshare-

purchase contract between the McIntyres and Marriott Ownership Resorts states "that title insurance is a necessary and required component in purchasing a timeshare interest." (*Id.* ¶42.) Specifically, the contract reads: "Closing costs associated with the purchase, financing and conveyance of a timeshare estate, include . . . title insurance premiums." (*Id.* ¶43 & Ex. A.)

The McIntyres had the option of obtaining the title insurance through Marriott Resorts Title Company or from another closing agent. (*Id.* ¶44.) They opted to use Marriott Resorts Title Company as their closing agent. (*Id.*) Consistent with the terms of the parties' timeshare-purchase contract Marriott Ownership Resorts conveyed the timeshare estate to the McIntyres through a special warranty deed. (*See id.* ¶46.)

The McIntyres contend that "the quality of the Special Warranty Deed renders [their] title insurance policy useless" because the special warranty deed provides the same protections as the title insurance. (*Id.* ¶¶49–52.) The McIntyres filed this lawsuit under the theory that the Marriott Defendants' "representations that title insurance is necessary are false . . . [and that] by representing that title insurance is necessary, the Defendants misrepresent the quality of the Special Warranty Deed and otherwise misrepresent the need for such protection." (*Id.* ¶¶54–56.) The McIntyres brought their claims under the Florida Vacation Plan and Timesharing Act and also under a theory of unjust enrichment.

### 2. Legal Standards

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

"[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter

of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)).

### 3. Procedural Arguments

The McIntyres begin their opposition with a pair of procedural arguments, neither of which is compelling. First they argue that the Marriott Defendants' motion should be denied because they failed to meet and confer, as required by Local Rule 7.1(a)(3). This argument ignores the language of the Rule. Local Rule 7.1(a)(3) states that a pre-filing conference is required prior to filing motions "except a motion . . . for summary judgment, . . . [or] to dismiss for failure to state a claim upon which relief can be granted." Since the Marriott Defendants' motion seeks both dismissal for failure to state a claim and summary judgment, they were not bound by the meet-and-confer requirements of Local Rule 7.1(a)(3).

The McIntyres' second argument is that Federal Rule of Civil Procedure 12(g) prohibits the Marriott Defendants from filing their motion to dismiss since they previously moved to dismiss the McIntyres' Amended Complaint. Rule 12(g) states that "[e]xcept [for a motion to dismiss for failure to state a claim under Rule 12(b)(6) or a motion to dismiss for lack of subject-matter jurisdiction] a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Since the Marriott Defendants' motion was filed under Rule 12(b)(6) for failure to state a claim, the restriction of Rule 12(g) obviously does not apply. This argument also fails because, as the McIntyres concede, the Marriott Defendants did not omit their failure-to-state-a-claim arguments from their first motion to dismiss. (Resp. 11, ECF No. 34) ("Defendants dedicate their motion to renewing already rejected arguments.").

### 4. Motion to Dismiss

**A. The McIntyres have not alleged that the Marriott Defendants made any actionable misrepresentations.**

The Florida Vacation Plan and Timesharing Act makes it unlawful for a person selling a timeshare to "[m]isrepresent a fact or create a false or misleading impression regarding the timeshare." Fla. Stat. § 721.11(4)(a) (2008). The Marriott Defendants argue that the McIntyres have not alleged any misrepresentation on their part regarding the timeshare. According to Marriott Ownership Resorts, it was necessary that the McIntyres purchase title insurance for the timeshare because Marriott Ownership Resorts would not

have sold them the timeshare unless they bought title insurance. (Mot. Dismiss 5–6, ECF No. 30.) In other words, it was true that title insurance was necessary because purchasing title insurance was a condition that Marriott Ownership Resorts insisted on when making the deal. Phrased differently, there was no misrepresentation because Marriott Ownership Resorts would not have sold the McIntyres the timeshare if they had not also purchased title insurance—thus title insurance was necessary if the McIntyres wanted to proceed with the purchase.

The McIntyres have not alleged that the sales agents for Marriott Ownership Resorts suggested that the title insurance would provide greater protection than the special warranty deed that Marriott Ownership Resorts would use to convey the timeshare to them. Rather, the full extent of the alleged misrepresentation is the simple statement that title insurance "was a 'required' and 'necessary' component of the purchase." (2d Am. Compl. ¶39.)

The McIntyres' allegations do not permit the Court to infer more than the mere possibility of misconduct. In *Bell Atlantic Corp. v. Twombly*, the Court explained that although the plaintiff had alleged facts that "could very well signify" an unlawful act, the Court need not accept that inference when there is "an obvious alternative explanation." *Twombly*, 550 U.S. 544, 567 (2007). The Court later explained that in "[d]etermining whether a complaint states a plausible claim for relief" a "reviewing court" should "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. And "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)); *accord Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The troubling thing about the McIntyres' claims is that, if accepted, they would create a precedent for virtually endless liability for parties doing business with each other based on misplaced conjecture over the use of common words. Imagine a movie theater that established a two-ticket-minimum policy. The cashier would inform a prospective customer that it is necessary for him to buy two tickets. Despite the customer's protests that he just needs one ticket, he buys two tickets because he hears it is necessary. He construes the cashier's statement that it was necessary to buy two tickets to mean that there is a new law in Florida establishing a two-ticket-minimum. Could he later sue the theater operator claiming misrepresentation? No, the law would not permit him to build a misrepresentation claim from his incorrect conjecture over the theater's use of the word necessary in that context. The same conclusion applies in this case.

In this case, the well-pled facts are that Marriott Ownership Resorts told the McIntyres that title insurance was a necessary component of the timeshare sale. From this generic statement, the McIntyres invite the Court to infer that by *necessary* Marriott Ownership Resorts meant—not that it was simply a condition of the deal—but rather that the McIntyres would need the title insurance to protect them from potential legal exposure that the special warranty deed might not protect them from. The McIntyres' allegations are far too conjectural to support an inference of wrongdoing. Based on the Court's judicial experience and common sense, the Court does not accept the McIntyres' proffered inference when there is an obvious alternative explanation for the word *necessary* in this context—that Marriott Ownership Resorts was communicating that obtaining title insurance was simply a part of the deal it was offering.

For these reasons, the McIntyres' claim for misrepresentation under the Florida Vacation Plan and Timesharing Act must be dismissed.

**B. The McIntyres' claims fail because the exhibits refute their claims.**

The McIntyres' have premised their claims on the conclusion that "the quality of the Special Warranty Deed renders Plaintiffs' title insurance policy useless." (2d Am. Compl. ¶49.) But they tacitly concede that, in at least one scenario, the title-insurance policy would provide them greater protection than the special warranty deed. (2d Am. Compl. ¶51.) The fact is that the title-insurance policy does provide greater protection to the McIntyres than the special warranty deed. The special warranty deed includes a warranty that is limited to claims arising by, through or under Marriott Ownership Resorts. (Deed, ECF No. 27-2.) This is completely consistent with Florida law. *Harris v. Sklarew*, 166 So.2d 164, 166 (Fla. 3d DCA 1964) (explaining that a special warranty deed "limits the scope of the warranty covenant to claims arising by, through or under the grantor"—as opposed to a general warranty deed that warrants against *all* claims). But the McIntyres' title-insurance policy does not include a similar restriction. (Title Ins. Policy, ECF No. 30-2.) The title insurance policy insures against *all* claims.[1] (*See id.*) A party may not plead around the plain language of their contracts. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the

---

[1] It is appropriate for the Court to consider the title-insurance policy in evaluating the Marriott Defendants' motion to dismiss since the title-insurance policy is central to the McIntyres' claims and is undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

general and conclusory allegations of the pleading, the exhibits govern."). For this reason as well, the Court will dismiss the McIntyres' claims.

### C. The McIntyres have failed to allege that Marriott Resorts Title Company made any statements to them.

Marriott Resorts Title Company argues that the McIntyres have not alleged that it made any statements to them regarding the timeshare. Without any alleged misstatements, Marriott Resorts Title Company asserts that the McIntyres have failed to state a claim against it for violating the Florida Vacation Plan and Timesharing Act. The Court agrees. *See* Fla. Stat. § 721.11(4)(a) (2008) (forbidding a timeshare seller from making any *statements* that "[m]isrepresent a fact or create a false or misleading impression regarding the timeshare"). For this reason, the McIntyres' claim for misrepresentation under the Florida Vacation Plan and Timesharing Act against Marriott Resorts Title Company must be dismissed.

### D. The McIntyres' unjust-enrichment claim fails because the timeshare purchase and the title-insurance purchase are both the subject of express contracts between the parties.

The Marriott Defendants argue that since they both have a contractual relationship with the McIntyres, the McIntyres' unjust enrichment claim must fail. It is true that, under Florida law, a plaintiff may not pursue a claim for unjust enrichment if an express contract exists concerning the same subject matter. *Williams v. Wells Fargo Bank N.A.*, No. 11-21233, 2011 WL 4901346 at *6 (S.D. Fla. Oct. 14, 2011) (Altonaga, J.). Although a plaintiff may generally plead claims in the alternative, *see* Fed. R. Civ. P. 8(d), an unjust-enrichment claim may not be pled in the alternative where all of the parties agree that an express contract governs the dispute. *See Williams*, 2011 WL 4901346 at *6. This is because an unjust-enrichment claim is an equitable cause of action that *implies* a contract as a matter of law even though there is no actual contract between the parties. *See 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Cont'rs, Inc.*, 43 So. 3d 877, 880–81 (Fla. 1st DCA 2010) ("When a true contract exists, the parties' rights are fixed by law and by the terms of the contract.").

In this case, the parties agree that express contracts exist between them regarding the sale of the timeshare and the title insurance. (*See* Mot. Dismiss 8, ECF No. 30.) Consequently, the Court must dismiss the McIntyres' unjust-enrichment claim. Even if the Court permitted the McIntyres to maintain the unjust-enrichment claim despite the existence of express contracts between the parties, the McIntyres would still fail to state a viable claim for relief. This is

because the Court has already rejected the McIntyres' claim that the Marriott Defendants made any misrepresentations regarding the sale of the timeshare and the related purchase of title insurance. These alleged misrepresentations were the crux of the McIntyres' unjust-enrichment claim. (*See* 2d Am. Compl. ¶58–60.) In other words, the Court has rejected the McIntyres' implicit assertion that it would be inequitable for the Marriott Defendants to retain the benefit of the title-insurance premiums. For these reasons, the Court will dismiss the unjust-enrichment claim.

### 5. Motion for Summary Judgment

Since the Court has concluded that the McIntyres have not stated a viable claim it must dismiss their pleading. But in the interest of completeness, the Court explains in this section the reasons why it would have granted summary judgment in favor of the Marriott Defendants, even had the McIntyres' stated a claim for which this Court could grant relief.

Uncontroverted evidence directly refutes the McIntyres' claims. The Marriott Defendants have presented unrefuted evidence that the McIntyres' title insurance "provides greater coverage than the warranties found in [Marriott Ownership Resorts'] Special Warranty Deed." (Sobien Decl. ¶¶11–15, ECF No. 30-2.) This undisputed evidence completely undermines the McIntyres' theory of liability in this case. In other words, based on this evidence it was not a misrepresentation for Marriott Ownership Resorts to say that title insurance was "necessary" because it is true that the title insurance will cover claims that the special warranty deed will not. (*See* Sobien Decl. ¶13.) Since there was no misrepresentation, and since the McIntyres have received a valuable financial product (*i.e.*, the title insurance policy) their unjust-enrichment claim also fails. *Cf. Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009) (explaining that an unjust-enrichment claim "necessarily fails" "when a defendant has given adequate consideration to someone for a benefit conferred").

The McIntyres offer no contrary evidence. Instead, they make several procedural arguments in an effort to persuade the Court not to grant summary judgment against them. They argue, first, that they have not been given adequate time to conduct discovery, and, second, that the Marriott Defendants should not be permitted to rely on the declaration of Wayne Sobien because they violated federal-discovery rules by not properly disclosing Sobien or the documents he refers to in his declaration. The Court is not convinced.

### A. The McIntyres have had sufficient time to conduct discovery to oppose the summary-judgment motion and have not shown how additional discovery would be helpful.

The McIntyres argue that, in this situation, "summary judgment should be denied or held in abeyance" because they have "not been given the opportunity to develop evidence that would support [their] claims." If a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" a court may defer or deny the summary-judgment motion. Fed. R. Civ. P. 56(d).

In this case, the McIntyres have had adequate time to conduct discovery. They initially filed their complaint in state court where, unhampered by the restrictions of Federal Rule of Civil Procedure 26(d)(1), they were free to immediately engage in discovery. Once the case was removed, the Court ordered the parties to complete their Rule 26(f) Conference by March 22, 2013. (Order ¶2, ECF No. 3.) So as of March 23, 2013, the McIntyres were free to engage in discovery. This open-discovery period lasted until July 24, 2013 when the Court stayed discovery at the joint request of the parties. The McIntyres had over four months to conduct discovery.

Four months is sufficient time for the McIntyres to have gathered adequate evidence to oppose the summary-judgment motion. The issue in this case is relatively discrete. The McIntyres' case comes down to a straightforward legal determination: does a title-insurance policy provide greater legal protection than a special warranty deed to the original buyer of a timeshare? The fact that the McIntyres do not have a qualified witness ready to provide testimony on this point begs the question of whether the Second Amended Complaint was filed in conformance with Federal Rule of Civil Procedure 11(b). That Rule imposes a responsibility upon every attorney filing a pleading before this Court to certify that the claims and other legal contentions presented in the pleading are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). That the McIntyres are unable to present even a single affidavit to support their claims and legal contentions in this case is troubling.

The McIntyres requests for additional discovery are unpersuasive. The McIntyres filed an affidavit from Jeffrey M. Norton, a partner in the law firm of Newman Ferrara LLP, to support their contention that additional discovery would allow them to oppose or respond to the summary-judgment arguments. Norton provides a list of potential deponents and a list of documents and other records that, according to him, the McIntyres need to respond to the Marriott Defendants' motion. (Norton Decl. ¶¶6–7, ECF No. 34-1.) But Norton fails to

explain *how* any of the testimony or any of the requested records would help the McIntyres oppose the simple argument presented in the summary-judgment motion. In the absence of some explanation how the requested discovery would help them prove their case, the Court denies the request. *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) ("It is clear that [the plaintiffs'] cannot rest on vague assertions that additional discovery will produce needed, but unspecified facts, but rather must specifically demonstrate how postponement of a ruling on the motion will enable them, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.") (internal quotation marks omitted).

### B. The Marriott Defendants properly disclosed Wayne Sobien as a potential witness in this case and so the Court may properly rely on his testimony.

The McIntyres argue that the Court must strike or disregard the declaration of Sobien because of alleged discovery violations. Specifically, they assert that the Marriott Defendants failed to identify Sobien as a potential witness in this case, and failed to provide the documents attached to his declaration as potential exhibits. (Resp. 14–15, ECF No. 34.) But contrary to their own argument, the McIntyres admit that the Marriott Defendants disclosed Sobien as a potential witness. (Resp. 3, ECF No. 34.) The McIntyres' real argument is that the Marriott Defendants are offering Sobien as an expert witness, although they did not previously identify him as an expert. (Resp. 15, ECF No. 34.)

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a) requires a party to provide other parties with name and contact information for "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a). Rule 26(e) requires a party to supplement these disclosures in a timely manner.

The Marriott Defendants have not offered Sobien as an expert. (Mot. Dismiss 9, ECF No. 38.) The Court has not construed or considered his testimony, including any opinion testimony, as predicated on any expertise. Rather, Sobien's testimony is properly based on his personal knowledge of documents and issues involved in this lawsuit. And the only documents the Court has considered is the special warranty deed, which was attached to the

Second Amended Complaint, and the McIntyres' own title-insurance policy, which they have incorporated into their pleading by reference.

A non-expert (or lay) witness may only provide opinion testimony if his or her opinions "are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (quoting Fed. R. Evid. 701). "[T]he opinion of a lay witness must be based on his or her personal firsthand perception, while an expert may opine in response to hypothetical questions." *Asplundh Mfg. Div. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1202 n.16 (3d Cir. 1995); *accord Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 & 1317 n.4 (11th Cir. 2011).

Sobien is a senior vice president for First American Title Insurance Company. First American is the company that issued the McIntyres their title-insurance policy in connection with their purchase of the timeshare. In his declaration, he explains what coverage the insurance—issued by his Company—provides to the McIntyres. Although he also explains the scope of the warranty contained in the special warranty deed issued by Marriott Ownership Resorts, that testimony is not his opinion because he is merely reading the plain language of the special warranty deed. (Sobien Decl. ¶9 ("By its language, [Marriott Ownership Resorts'] Special Warranty Deed only warrants the title against the lawful claims of all persons claiming by, through or under [Marriott Ownership Resorts] following [Marriott Ownership Resorts'] acquisition of title.")). Since his Company issued the McIntyres' title-insurance policy, Sobien's statements explaining the scope of that title-insurance policy are: (a) rationally based on his perception as a senior vice president for First American, (b) helpful to a clear understanding of the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge. As such, his opinions are permissible lay opinions. *Cf. Asplundh Mfg. Div.*, 57 F.3d at 1195–1203 (providing an extensive discourse on the "personal knowledge, rational basis, and helpfulness standards of [Federal Rule of Evidence] 701").

The Marriott Defendants did not violate any federal-discovery rules in relying on Sobien's testimony in support of their summary-judgment motion. They properly disclosed Sobien as a witness in this case and have not offered his declaration as expert testimony. Since the Marriott Defendants did not violate Rule 26(a) or (e) in connection with Sobien's declaration or the McIntyres' title-insurance policy, Rule 37(c)(1) does not provide a basis for the Court to exclude his testimony.

### C. Conclusion

For the reasons detailed in this Order, the Court **grants** the Marriott Defendants' Motion to Dismiss The Second Amended Complaint (ECF No. 30). The Court dismisses the McIntyres' Second Amended Complaint with prejudice. The Court directs the Clerk to **close** this case.

**Done and ordered** in chambers at Miami, Florida on January 13, 2015.

_____
Robert N. Scola, Jr.
United States District Judge